Curia per
Johnson, J.
This case has been argued upon the assumption, that at the time the defendant indorsed and transferred the note in question to the plaintiff, Prescott, the maker was resident in Charleston; and although this fact is not distinctly stated in the protest which seems to have been received as evidence of every thing it contained, I think from the terms used it may fairly bo inferred, and in the determination of the case I shall take it for granted.
The case of Halls, Kirkpatrick & Co. vs. Howell, (Harper Rep. 426,) is decisive that a written demand of Dayment from the maker of a promissory note, transmit *505 ted by mail, is not sufficient to charge the indoi ser; so that the notice, or demand, sent by mail to Philadelphia, whither it was supposed Prescott, the drawer, had gone, is altogether unavailing, and the case is resolved into the question, whether Prescot, having no place of residence in Charleston, and having left there and gone to Philadelphia before the note fell due, dispensed with a demand of payment?
An indorsement in the ordinary form, is nothing more than a request of the payee of a note, that the maker will pay to the indorsee the contents, according to the tenor of the note ; but as a contract between the indorser and indorsee, much more is implied than is expressed. It imposes on the indorsee the obligation of presenting the note. to the maker for payment, and in its legal effect obliges the indorser to pay the amount, if the maker does not. These are the general obligations and liabilities; but the usages of merchants tvho principally deal in the medium of exchange, have made them to depend on ii great variety of circumstances, and which necessarily" enter into them. Tlius, if a demand on the maker had become from any cause impossible, it would be unreasonable to exact the implied obligation of the indorsee. — - And so, if the indorsee should delay the demand of payment, or notice to the indorser for an unreasonable time, and until the maker had become insolvent it would be equally unjust that his liability to pay the note should be enforced. And although many of the rules which have grown out of this system, when viewed singly and in the abstract would appear arbitrary and unreasonable, yet when taken in connexion with the system, it will be found that they are based on the precepts of natural justice, or are calculated to subserve the great purposes of commerce.
Now I take it that there is nothing in the principles of justice which would require the indorsee to make a de- *506 mancl, when, as in the case of Putnam vs. — 4 Mass. 53, it had become impracticable, the maker having absconded. Nor can I perceive in what way it would-promote commerce. — But on the contrary,. that rule which enjoined the performance of impossibilities, would deter the most hardy and adventurous from placing themselves within its operation. And it seems to be generally agreed, that the absconding of the maker of a note, or the acceptor of a bill of exchange, will excuse the holder from making a demand, (see Baylie on Bills, 95; Lord Ray. 743,) and where he has left the country for any cause whatever, presentment and demand of payment of his wife or agent, at the place where he formerly resided would be sufficient, (2 Esp. Rep. 511; 2 Taunt. 206.) These cases-, I think, establish very clearly the principle that, where a demand has become impossible, or impracticable and unreasonable, it will be dispensed with. And the great difficulty is inlaying down a precise rule, as to what circumstances shall, or shall not excuse it. I have not been able to lay my hand on any case which has decidedly marked out the line. In the case of Widgery vs. Monroe, 6 Mass. 451, the Court, it is true, say passingly, that if on the day the note becomes due the maker is out of the country, the plaintiff would be excused from making the demand, and yet it would seem unreasonable, that when he had only removed across an imaginary line separating two countries, that it should be dispensed with.— It is equally unreasonable that the holder should be compelled to follow him to St. Petersburgh for that purpose.
The necessity of a certain rule leaves no alternative, but the adoption of one or the other of these extremes.— There can be no compromise between them, that will not work injustice; as it must remain a matter of discretion, and in this dilemma I cannot hesitate to adopt the suggestion in the case of Widgery vs. Monroe.
*507 For ail legal purposes a neighbouring State is regarded hs a foreign country. Bills drawn on a sister State are regarded as foreign bills; and the terms beyond the seas, used in the stat. of limitations, have in construction béen -applied to a neighbouring State, and I come to the conclusion that, for the purposes of a demand on the maker of a promissory note, it must be so regarded, and that his absence from the State in which the note was made, and where it was understood it was to be paid, will excuse the holder from making a personal demand in order to charge the indorser. Considerable reliance has been placed on the case of Collins vs. Butler, 2 Str. 1087, cited in Baylie 95, where it is said, that if the drawee has merely removed from the place in which the bills .represents him to reside, it is incumbent on the holder to use every reasonable diligence to find out where he is, and if he succeeds, to present it for payment at that place. But this must be understood with some exceptions; for it never could have been intended to require that he should follow him to the end of the earth; and it is clearly reconcilable with the views taken. If he remains in the country, and has only changed his residence, then the holder must find him out, and make his demand, but if he has iemoved to a foreign country, he is excused.
The presiding Judge founds his judgment on the insufficiency — 1st. Of the demand on the maker; and, 2d. Of the notice of refusal to pay to the indorser, the defendant. The first has been already disposed of, and the facts stated in the protest in relation to the latter are, that the notary called twice at his place of residence, and not finding him at home, left a written notice.—Clearly this was sufficient. (Vide Chitty on Bills, 332-3.) Decree reversed and new trial granted.

Decree reversed.